## Applications of JET FLORIDA AIRLINES, Inc., et al.

Docket Nos. ACC-73130, 73134, 73170,
73179, 73201. Order No. 11237.

Florida Public Service Commission.

February 14, 1974.

W. Robert Oliver, Jr., Tallahassee, for Jet Florida Airlines, Inc. (no. 73130), and protestant to all other applications.

Richard J. McCrory and H. Rex Owen, both of St. Petersburg, for Air Florida, Inc. (no. 73134), and protestant to Jet Florida and Ambassador International Airlines.

W. K. Zewadski and Radford W. Smith, both of St. Petersburg, for Ambassador International Airlines, Inc. (no. 73170), and protestant to all other applications.

Graham C. Miller, Miami, for Royal Airlines, Inc. (no. 73179), and protestant to all other applications except Air Florida, Inc.

Sanford Freed, Miami, for Atlantic Southeast Airlines, Inc. (no. 73201), and protestant to all other applications.

David C. Latham and James E. Wharton, both of Orlando, for Shawnee Airlines, Inc., protestant to all five applications.

Robert L. Gray, Tampa, testified in behalf of Sun Airlines, protestant to Jet Florida, Air Florida, Ambassador and Royal.

Lee H. Hill, Jr., Tampa testified in behalf of Florida Airlines, Inc., protestant to Ambassador International Airlines and Atlantic Southeast.

M. Robert Christ, Tallahassee, for the commission staff and the public generally.

Chairman WILLIAM H. BEVIS, and Commissioners WILLIAM T. MAYO and PAULA F. HAWKINS participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to notice the commission by its duly designated chief hearing examiner, H. E. Smithers, held public hearings in Tallahassee, Winter Park, Jacksonville, Tampa and Miami, on March 27, 28, April 24, 25 and May 7, 8, 9 and 10, 1973.

The examiner's recommendation was duly served on all of the parties. Exceptions to the recommendation and replies thereto were filed with the commission. Oral argument was heard on November 26, 1973. The entire record herein, including the applications, the testimony adduced at the public hearings, the exceptions and replies to the examiner's recommendations and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its order in this cause.

The above-styled applications involve the transportation of passengers and property intrastate by aircraft pursuant to §§330.45-330.53, Florida Statutes. One consolidated order will be issued dealing with the applicants together and individually. These applications were, for all practical purposes, filed at or about the same time, approximately within thirty days of each other. In addition to each of the applicants protesting each other's routes, there appeared two grandfather certificate holders to protest these instant applications to the extent that they would conflict with their grandfather routes. The grandfather protestants were Florida Airlines and Sun Airlines. Air Florida, Inc. also was a grandfather certificate holder and protested the other applications, but like the other grandfather applications presented little evidence in support of its protest. An exception to this was Florida Airlines' protest of Atlantic Southeast Airlines, Inc.'s route to serve between Jacksonville and Gainesville. The record indicates no need for additional air carriers on this route. Florida Airlines' traffic study indicates only approximately four to five passengers per day travel between Jacksonville and Gainesville with the exception of football weekends; and on those weekends, their aircraft was not filled to capacity.

On February 4, 1974, Florida Airlines filed a pleading called protest and petition to intervene in Dockets No. 73134-ACC, No. 73170-ACC, and No. 73201-ACC. Although we do not think intervention is necessary, we are going to grant the same. Florida Airlines has, as indicated above, participated in the hearings on these dockets and most actively in Docket No. 73201-ACC, wherein we have recognized their rights and protest consistent with the record. With our ultimate treatment of Docket No. 73170-ACC, we feel their protest to be moot. We find the protest to Docket No. 73134-ACC not supported by competent substantial evidence.

At the outset, it is without cavil that public convenience and necessity requires additional air carrier service throughout the entire state of Florida. Contrary to the examiner's recommendation that Pensacola has no community of interest with the rest of the state, the commission will take judicial notice to the contrary and of the difficulty of commuting between Pensacola and the rest of the state by air carrier (e.g., only National services between Pensacola and Tallahassee). Generally, the evidence indicates a desire for more frequent service throughout the state of Florida. By stipulation between the applicants, the public witnesses' testimony indicating public convenience and necessity would be applicable to all applications where pertinent. Therefore, there is no need for a delineation of each individual public witnesses' testimony other than to say, as previously stated, a need for more adequate and frequent statewide air transportation does exist. A summarization of the organizational and operational evidence submitted by each of the five applicants is made hereinafter.

*Jet Florida Airlines* (JFA) — This carrier filed for basically three routes, to-wit: Route No. 1 St. Petersburg/Tampa/Melbourne/Miami/Orlando/Jacksonville; Route No. 2 St. Petersburg/Tampa/Tallahassee/Orlando/Miami / Tampa / Jacksonville; and Route No. 3, which includes such cities as Gainesville, Daytona Beach, Melbourne, Vero Beach, West Palm Beach, Ft. Myers, as well as Tallahassee, Jacksonville, Miami, Tampa and St. Petersburg. Route No. 3 was not involved in this application as it was withdrawn at the time of the hearing with no evidence in support thereof. This carrier proposes to use BAC 1-11's and has a firm commitment from American Airlines to purchase them on a lease-option. This type of craft is a rearmounted twin-engine jet with a seating capacity of 74 passengers. The rates proposed to be charged by this carrier are 30 to 50 percent lower than the trunk lines i.e., interstate carriers. From an overall operational standpoint, the financial capability of this carrier is better than most of the applicants, primarily because of its $826,800 escrow account with Boulevard National Bank of Miami. We note that this carrier

by its Exhibit No. 12 has expended a great deal of thought and planning in organizing its operations. The record indicates that the principals of this corporation have considerable experience and have done a great deal of research into the feasibility of air transportation in the state of Florida. Mr. R. J. Hunt, chairman of JFA, is president of Embry Riddle Aeronautical University. The president of JFA has been with Pan American Airways for a number of years. Also on the board of directors is a former executive vice president of Pan American and Pan American's former chief pilot. Preparation for this carrier has been in the works since the early 1960's.

*Air Florida, Inc.* (AP) : This carrier is proposing to permanently add Tallahassee to its present grandfather authority of St. Petersburg, Orlando and Miami. This carrier is now operating between Tallahassee and St. Petersburg under its fourth emergency authority which was granted subsequent to the hearings in this docket. AF's financial fitness cannot be questioned because they are a viable going air carrier. This applicant is also seeking authority to use both Class I (above 100 seats) and Class II (50 to 99 seats) aircraft on all of its routes. At the time of the hearings, AF was authorized to use only Class I's. They intend to swap their Boeing 707 for two Lockheed Electra's and purchase a third Electra elsewhere. AF plans to modify the Electras to 85 and 102 seats whereas it is originally designed for 121 seats.

*Ambassador International Airlines, Inc.* (AIA) — This carrier is seeking authority to transport passengers and baggage between Pensacola, Tallahassee, Jacksonville, St. Petersburg, Ft. Lauderdale and Miami in Boeing 720's and Convair CV 600's. The former is a 138-passenger plane while the latter is a 40-seat aircraft. It does not at this time own any of these planes but intends to purchase four Boeing 720's from United Airlines and four Convair CV 600's from Texas International Airlines. This applicant's chief operations officer testified that they do not have a firm commitment to acquire such aircraft. The 720's would be used on direct flights, e.g., St. Petersburg to Miami, Jacksonville to St. Petersburg and Tallahassee to St. Petersburg. The Convair CV 600's would be used on the St. Petersburg to Gainesville, Tallahassee to Ft. Lauderdale type of flights. From an overall operational standpoint, the financial capability of this carrier leaves much to be desired primarily because of its minimal starting capital and mere promises of additional capital when needed. This applicant plans to charge basically the same fares as trunk line carriers.

*Royal Airlines, Inc.* (RAL) — This carrier seeks authority to originate from Ft. Lauderdale, its home base, to Orlando, Jacksonville and return; and Tampa, Tallahassee and return. It proposes

to use Convair 440's which are 44-passenger twin-engine prop aircraft. At this juncture it proposes to use only three of these airplanes. The record reflects that RAL intends to engage in extensive charter and contract carrier service in addition to intrastate scheduled service utilizing the same three aircraft. This carrier is well-establshed as far as maintenance ability of its aircraft is concerned by the purchase of another corporation named Business Airmotive Service Corporation whose primary business is handling the repair and maintenance of airplanes. The financial evidence concerning this applicant is similar to that of AIA.

*Atlantic Southeast Airlines* (ASA) — This carrier proposes to provide air carrier transportation between Miami, Jacksonville and Gainesville with the inclusion of Jacksonville to Gainesville only on its weekend flights. It proposes to use Martin 404's which are 48-passenger planes. It owns six of these now which are used extensively in their charter operations at this time.

The legislature, during its 1972 session, enacted Chapter 72-374, Laws of Florida, (now codified as §§330.45-330.58, Florida Statutes), placing upon this commission the responsibility of economic regulation of intrastate air transportation of persons or property in scheduled service. The purpose of this law, as expressed in §330.45, is to regulate ". . . air carriers within the state, in order that low cost, high volume air transportation may be established between the major areas of this state." In addition thereto, subsection (6) of §330.49 requires the commission to consider, among other things —

"(a) The business experience of the applicant air carrier in the field of air operations;

(b) The financial stability of the air carrier;

(c) The insurance coverage of the air carrier;

(d) The type of aircraft which the air carrier would employ;

(e) Proposed routes and minimum schedules to be established;

(f) Whether the air carrier could economically give adequate service to the communities involved;

(g) The need for such service and its effect on any regional or statewide transportation plan;

(h) The experience of civil aeronautics board certificated air carriers operating over the same or parallel routes;

(i) Any other factors which may affect the public interest."

The evidence established in the transcript of record now under consideration is of little help in answering and supplying findings for all of the above nine determining factors. The business experience of all of the applicants, with the exception of ASA and AF, are nonexistent although each applicant had directors and persons directly connected with the proposed operation possessing a great deal of aviation experience. ASA is now and has been involved in extensive charter operations. AF, which was a grandfather applicant, has been operating approximately 18 months. A review of the record suggests that three of the carriers (AF, JFA, ASA) are by far better situated financially. Each of the remaining (RAL, AIA) carriers have a minimum of tangible financial support available. Additional financing was by unsubstantiated promises. As to the other factors required to be considered by the commission under subsection (6), the record leaves much to be desired; but we do find from the record when considering the proposed operations that the JFA choice of aircraft is more desirable for passenger comfort and operational economies than RAL's. These two propose to provide service over the same routes.

The commission's examiner recommended that authority to transport property had not been supported by competent substantial evidence. The commission finds that at this juncture in our scheme of regulation and under these circumstances it is advisable to grant authority to transport property as an adjunct to authority granted for the transportation of persons. No carriers appeared to protest the grant of authority to transport property as such.

At the outset, it is important for the commission to determine what philosophy it will establish initially in regard to its newly acquired authority to regulate airlines within the state of Florida. The intrastate air carrier industry we consider to be in its infancy. The commission considers it to be imperative that in the exercise of its authority a most flexible and liberal posture should be taken in the granting of certificated authority. To do otherwise would place the commission in a position of strangling the industry it seeks to regulate. To take a narrow and restricted point of view would not be, in our opinion, in the public interest. Our "pole star" in all that we regulate is the public interest — it will not change now. We consider the public to be first and foremost in any scheme of regulation.

Although we recognize that Air Florida has been transporting passengers on a route from Tallahassee to St. Petersburg, such transportation was performed on temporary authority and not subject to protection from other applicants. In fact the legislature does not require the commission to protect existing air carriers as

it does motor carriage in Chapter 323, Florida Statutes;[1] if such was the intent it would have been a simple matter of adding a tenth requirement to subsection (6). This is not to say the commission will foster disruptive competition, but to the contrary we will do all within our power to protect carriers in those routes where the records reflect that they are providing completely adequate service as is evidenced by our protection of Florida Airline's route between Jacksonville and Gainesville.

Although we recognized that some of the routes we are granting herein will be somewhat overlapping[2] — with proper scheduling disruptive competition will not occur.

The commission, therefore, finds from the foregoing that AF, JFA and ASA possess the needed business experience in the field of air operations; possess the financial stability for such operation; have available the normal insurance coverage required and the aircraft proposed to be used are adequate and desirable; that each of these air carriers will provide economical and adequate service to the communities involved; that there is a need for such service and it will not adversely affect any regional or statewide transportation plan. We further find that considering the proposed operations RAL and AIA are inadequately financed and use aircraft not sufficient to meet the public need as scheduled intrastate air carriers and their applications should be denied.

It is therefore ordered that the application of Jet Florida Airlines, Inc., 66 North Atlantic Avenue, Cocoa Beach, Florida, to operate as a Class II Air carrier of passengers, baggage and property be and the same is hereby granted in part and that Certificate No. 10-ACC be and the same is hereby issued to Jet Florida Airlines, Inc., authorizing the transportation of passengers, baggage and property over the following routes —

---

1. §323.03(4)(d), Florida Statutes, requires the commission to consider ". . . the interest of transportation facilities already on the route."

2. See Order No. 7670, Docket Nos. 7855-CCT and 7996-CCT, affirmed by the Supreme Court of Florida without opinion. "Where two carriers are equally qualified financially and by experience and apply at substantially the same time for virtually the same operating authority, the commission *must base its decision on the record made in each case* in support of the two applications in the absence of evidence that only one additional carrier is needed, the commission must grant both applications assuming they are supported by substantial evidence . . . certainly we cannot arbitrarily pick one of the applying carriers over the other . . ." (Emphasis added)

Tallahassee-Orlando-Ft. Lauderdale-Miami
Tallahassee-Tampa-Ft. Lauderdale-Miami
Jacksonville-Orlando-Ft. Lauderdale-Miami

This grant of authority is conditioned upon the following conditions: that said applicant file with this commission within 180 days from the date of this order evidence of Federal Aviation Administration certification; and thereafter commence full operation within 30 days of Federal Aviation Administration certification; otherwise, the grant of authority shall be null and void.

It is further ordered that the application of Air Florida, Inc., 9300 South Dadeland Boulevard, Miami, Florida 33156, to operate as a Class I and II Air Carrier of passengers, property and baggage be and the same is hereby granted and tnat Certificate No. 9-ACC be and the same is hereby extended so as to authorize the transportation of passengers, baggage and property over the following routes—

Tallahassee-St. Petersburg-Miami
Tallahassee-Orlando-Miami

This grant of authority is conditioned upon the following conditions: that said applicant file with this commission within 30 days from the date of this order evidence of Federal Aviation Administration certification and thereafter commence full operation within 30 days of Federal Aviation Administration certification; otherwise, the grant of authority shall be null and void.

It is further ordered that the application of Atlantic Southeast Airlines, Inc., 4275 Northwest 77th Avenue, Miami, Florida 33166, to operate as a Class II Air Carrier of passengers, property and baggage be and the same is hereby granted in part and that Certificate No. 11-ACC be and the same is hereby issued to Atlantic Southeast Airlines, Inc., authorizing the transportation of passengers, baggage and property over the following routes —

Jacksonville-Miami
Jacksonville-Tallahassee-Panama City-Pensacola
Jacksonville-Daytona Beach-Melbourne-West Palm Beach-Miami

This grant of authority is conditioned upon the following conditions: that said applicant file with this commission within 90 days from the date of this order evidence of Federal Aviation Administration certification and thereafter commence full operation within 30 days of Federal Aviation Administration certification; otherwise, the grant of authority shall be null and void.

It is further ordered that the above applicants comply with all statutory provisions relating to insurance, schedules, rates and tariffs and all rules, regulations and requirements of this commission now in existence or hereinafter enacted.

It is further ordered that the petition to intervene by Florida Airlines is hereby granted but that its protest in Dockets No. 73170-ACC No. 73201-ACC and No. 73134-ACC is hereby denied.

It is further ordered that the application of Royal Airlines, Inc., International Airport, 902 S. W. 34th Street, Ft. Lauderdale, Florida 33315, be and the same is hereby denied.

It is further ordered that the application of Ambassador International Airlines, Inc., St. Petersburg-Clearwater International Airport, St. Petersburg, Florida 33732, be and the same is hereby denied.

By order of Chairman WILLIAM H. BEVIS, Commissioner WILLIAM T. MAYO and Commissioner PAULA F. HAWKINS, as and constituting the Florida Public Service Commission, this 14th day of February, 1974.

*William B. DeMilly*
Administrative Secretary